PER CURIAM.
¶1 Green Bay Sportservice, Inc. (GBS) seeks a statutory exemption from paying its hourly employees overtime on the ground that it qualifies as a recreational or amusement establishment. As GBS failed to prove that it satisfies the definition of a "recreational or amusement establishment" under WIS. ADMIN. CODE § DWD 274.04(8) (Apr. 2018), we affirm the denial of the exemption.
Background
¶2 GBS holds the exclusive contract to provide food and beverage concession services at Lambeau Field, home of the Green Bay Packers football team. Within Lambeau Field is Curly's Pub, a bar and restaurant that is open year-round to the public and is part of GBS's contract. Two employees of GBS filed a complaint alleging that GBS failed to pay them overtime in violation of WIS. STAT. § 103.02 (2015-16).[1] In Wisconsin, employers are required to pay nonexempt employees "time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." WIS. ADMIN. CODE § DWD 274.03. Exemptions to the overtime payment rule are detailed in WIS. ADMIN. CODE § DWD 274.04, and GBS argues it is exempt from paying overtime pursuant to § DWD 274.04(8).
Any employee employed by an establishment which is an amusement or recreational establishment , [is exempt from the overtime pay requirements] if a) it does not operate for more than 7 months in any calendar year, or b) if during the preceding calendar year, its average receipts for any 6 months of such year were not more than 33 1/3% of its average receipts for the other 6 months of such year.
(Emphasis added.)
¶3 The Department of Workforce Development (DWD) denied GBS an exemption on the ground of the "single establishment" rule as "concessions themselves are not an amusement or recreational establishment, and [GBS] cannot be considered a single establishment with the host establishment, Lambeau Field." On administrative review, the circuit court agreed with the denial of the exemption, but it did so under the analysis set forth in Hill v. Delaware N. Cos. Sportservice, Inc. , 838 F.3d 281 (2d Cir. 2016).[2] We affirm as regardless of whether we apply the "single establishment" rule utilized by DWD or the test set forth in Hill , GBS failed to prove that it met either test.
Standard of Review
¶4 We review requests for exemptions from overtime laws in light of and consistent with the Federal Fair Labor Standards Act (FLSA) and the Code of Federal Regulations. WISCONSIN ADMIN. CODE § DWD 274.04(8)[3] specifically provides that "[t]his rule shall be construed in such manner as to be in conformity with any comparable federal statute or regulation."See also Madely v. RadioShack Corp. , 2007 WI App 244, ¶ 13, 306 Wis. 2d 312, 742 N.W.2d 559 ("Because Wisconsin's administrative regulations are to be interpreted in such a manner as to be consistent with the Federal [FLSA] and the Code of Federal Regulations, we look to federal cases discussing the FLSA and the corresponding federal regulations to assist in our analysis.").
¶5 Exemptions under the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc. , 361 U.S. 388, 392 (1960) ; A.H. Phillips, Inc. v. Walling , 324 U.S. 490, 493 (1945). An employer has the burden of proving that the exemption applies. Klein v. Rush-Presbyterian-St. Luke's Med. Ctr. , 990 F.2d 279, 283 (7th Cir. 1993).
¶6 Whether GBS qualifies for the exemption is a mixed question of fact and law. See Michels Pipeline Constr., Inc. v. LIRC , 197 Wis. 2d 927, 931, 541 N.W.2d 241 (Ct. App. 1995). We uphold factual findings of DWD "if there is credible and substantial evidence in the record on which reasonable persons could rely to make the same findings." deBoer Transp., Inc. v. Swenson , 2011 WI 64, ¶ 30, 335 Wis. 2d 599, 804 N.W.2d 658 (citation omitted). Whether the facts establish an exemption under WIS. ADMIN. CODE § DWD 274.04(8) presents a question of law, which we review de novo. Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶ 12, 382 Wis. 2d 496, 914 N.W.2d 21 ; Swenson , 335 Wis. 2d 599, ¶ 31. In Tetra Tech , our supreme court determined that "[w]e have ... decided to end our practice of deferring to administrative agencies' conclusions of law." Tetra Tech , 382 Wis. 2d 496, ¶ 108. Accordingly, we give no deference to DWD's interpretation of WIS. ADMIN. CODE § DWD 274.04(8).
Analysis
¶7 The federal law is in flux. Some jurisdictions apply the "single establishment" test set forth by the Department of Labor (DOL) in several opinion letters. Whereas others, such as the court in Hill , found an exception to the "single establishment" test for "concessionaires."[4] Hill is on point with the facts of this case. In Hill , Maryland Sportservice contracted with the Baltimore Orioles baseball team at Oriole Park to operate concession services for ticket holders. Hill , 838 F.3d at 285. Maryland Sportservice also engaged in operations at Oriole Park on non-game days, including the Orioles Team Store and Dempsey's Brew Pub and Restaurant, which are both open to the public throughout the year. Id. at 286. Hill teaches that the amusement and recreational establishment exemption has two prongs: the establishment prong and the seasonality prong. The establishment prong requires us to determine whether an employee is "employed by an establishment which is an amusement or recreational establishment." Hill , 838 F.3d at 293 ; WIS. ADMIN. CODE § DWD 274.04(8). If the employer meets the establishment prong, we then consider the seasonality prong, which is a two-part test.
A. Establishment Prong
¶8 The establishment prong of WIS. ADMIN. CODE § DWD 274.04(8) requires that for an employer to be exempt from overtime pay requirements it must be an "amusement or recreational establishment."[5] As noted above, DWD employed the "single establishment" rule to deny the exemption. The "single establishment" test comes from DOL opinion letters. One such opinion letter, dated June 22, 1967, explains that the amusement and recreational establishment exemption "depends upon the character of the establishment by which the employee is employed" and may apply to "[f]ood and souvenir vendors employed by an establishment such as an amusement park, baseball park, racetrack or dog track ... if the establishment they are employed by meets the requirements of (A) or (B) of this section." The DOL went on to explain that the exemption "will also apply to food and souvenir vendors employed by a concessionaire operating on the premises of such an establishment provided the operations of the concessionaire and the host establishment constitute a single establishment which meets the requirements of the exemption."
¶9 Similarly, a DOL opinion letter dated June 8, 1979, discussed a fast food business at a professional baseball park, noting that a food concessionaire at such an establishment would be exempt "provided the operations of the concessionaire and host establishment constitute a single establishment which meets the requirement for the exemption." Finally, a January 15, 2009 opinion letter addressed a concessionaire "hold[ing] an exclusive contract with the owner of a recreational establishment to provide various catering services to the general public and to private parties who use the facility." Again, the DOL postulated that "[r]estaurants are not generally recognized as amusement or recreational in character. Employees of a restaurant operating on the premises of an amusement or recreational establishment ... may come within the [statutory] exemption provided the operations of the restaurant and host establishment constitute a single establishment." DWD explained that "[GBS] and Lambeau Field are not a 'single establishment.' [GBS] is a separate legal entity with separate records and bookkeeping, and there is no interchange of employees between [GBS] and Lambeau Field." GBS does not claim that it is a "single establishment" with Lambeau Field, and we see no evidence in the record to suggest an alternative determination. Applying the "single establishment" test, we conclude that GBS fails the establishment prong as it is not an amusement or recreational establishment.
¶10 Hill , in contrast, distanced itself from the "single establishment" test, concluding that there is a narrow category of employers who qualify as "concessionaires" under 29 U.S.C. § 213(a)(3) without directly providing amusement or entertainment. Hill , 838 F.3d at 285. Establishments such as Maryland Sportservice "are exempt in their own right, not because they constitute a single establishment with the [amusement or entertainment hosts] they serve," but because they qualify as "concessionaires." Id. at 292. The court defined "concessionaires" as "establishments whose purpose is to sell goods and services on the premises of an amusement or recreational host facility to the host's customers for their use or consumption on the host's premises as they participate in the host's amusement or recreational activities." Id. Hill determined that Maryland Sportservice and the Baltimore Orioles did not have to qualify as a single establishment to qualify for the exemption. Id.
¶11 Hill explained, however, that there are limitations to the "concessionaire" definition, specifically addressing how the operations of Maryland Sportservice outside of game days would impact the exemption as those "are not activities of a concessionaire as defined above because these activities are not associated with a particular baseball game." Id. at 293. Hill found the "outside operations" to include operations such as the team store, the restaurant, and rental of the clubs and lounges at Oriole Park. Id. The court explained that "the disparity in the numbers of employees on game days compared to non-game days-as many as 600 versus as few as 12-makes the extent of operations that are not typical of a concessionaire de minimis." Id. The court continued, "We believe that, with our working definition of concessionaire, a de minimis level of non-concessionaire activities does not detract from an establishment's overall amusement or recreational character." Id.
¶12 If we accepted Hill 's interpretation of the amusement or recreational establishment exception under 29 U.S.C. § 213(a)(3), we would have to agree that employers such as GBS may qualify as "concessionaires" under WIS. ADMIN. CODE § DWD 274.04(8) so long as the employer engages in a "de minimis level of non-concessionaire activities" that do not "detract from an establishment's overall amusement or recreational character." Hill , 838 F.3d at 285, 293. While Maryland Sportservice proved that its non-game day operations were de minimis, GBS has not.
¶13 If we applied Hill to GBS, we would conclude that GBS failed to establish that it is a concessionaire entitled to the statutory exemption. There is no dispute that Lambeau Field, the host facility, has an amusement or recreational character as it hosts football games and no dispute that GBS "sells goods or services to the host's customer's for their consumption or use during the host's amusement or recreational activities," i.e., at football games. See Hill , 838 F.3d at 285, 292. The most important issue, however, is that GBS never proved that its non-game days revenue and operations are "de minimis," in other words, whether its "business is predominantly with ticket holders during game days." Id. at 293.
¶14 As the circuit court explained, there is no information "as to the number of employees employed on game days compared to non-game days, or even the number of game days in a calendar year." We acknowledge that the administrative record includes a table, buried in a letter from GBS's counsel, professing to establish "the average receipts received by GBS in the highest-earning six months of 2013 compared to the lowest earning six months." The table, however, is not supported by evidence in the record. See Liger v. New Orleans Hornets NBA Ltd. P'ship , 565 F. Supp. 2d 680, 686 (E.D. La. 2008) (holding that calculation of ratio using revenues rather than receipts did not provide sufficient evidence that 29 U.S.C. § 213(a)(3) applied for exemption to survive summary judgment). There is no evidence in the record as to when or how many games days there were so as to correlate those records with the "average receipts" in the table supplied. There is no evidence as to the average receipts of Curly's Pub or all the other activities that take place at Lambeau Field on non-game days.
¶15 GBS claims that it was unable to provide relevant figures for the twelve months preceding the work periods at issue because it was a "new business." GBS's "new business" excuse is unavailing as it has the burden of proof to show entitlement to the exemption. GBS also argues that DWD "accepted as undisputed fact"[6] that "[t]he primary purpose of [GBS] is to sell food and beverages to ticket holders attending National Football League games at Lambeau Field, and the overwhelming majority of its business is conducted exclusively with ticket holders during football games ... [and that] Curly's Pub was only 'a small part of [GBS's] business.' " DWD made no such findings of fact in its final determination nor does the evidence in the record support such a factual conclusion. In sum, GBS provided no receipts or records to prove that non-game day revenue was de minimis, and, therefore, failed to prove that it is an "amusement or recreational establishment" under the exemption definition set forth in Hill . Thus, under either Hill or the "single establishment" test, we conclude that GBS failed to meet its burden.
B. Seasonality Prong
¶16 If we follow the jurisdictions that employ the "single establishment" test, there is no dispute that GBS and Lambeau Field are not a "single establishment." For completeness, we will briefly address the seasonality prong. The seasonality prong of WIS. ADMIN. CODE § DWD 274.04(8) provides that the employer must not "operate for more than 7 months in any calendar year" (Test A) or "its average receipts for any 6 months of [the preceding calendar year] [must not be] more than 33 1/3% of its average receipts for the other 6 months of such year" (Test B). GBS failed to establish that it satisfied either Test A or Test B.
¶17 Although GBS argued that it satisfied Test A before DWD and the circuit court, GBS appears to have abandoned that argument on appeal. Reiman Assocs., Inc. v. R/A Advert., Inc. , 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (Issues not briefed are deemed abandoned.). Accordingly, we do not address this issue, other than noting our skepticism that GBS could satisfy the criteria as GBS "operate[s]" Curly's Pub at Lambeau Field year-round. See WIS. ADMIN. CODE § DWD 274.04(8). As the court in Hill explained: "Maryland Sportservice's operations at Oriole Park do not as obviously satisfy the seasonal operations test. While most of its business is tied to baseball games, which occur during a baseball season lasting no more than seven months, it continues to operate the Orioles Team Store and Dempsey's Brew Pub during the off-season." Hill , 838 F.3d at 294.
¶18 As to Test B (receipts), we previously noted that the only information in the record concerning GBS's receipts is a table included in a letter from GBS's counsel purporting to show that GBS's revenue in its lowest-earning six months of 2013 is 14.16% of its highest-earning six months. GBS failed to provide evidence supporting those figures or as to how the figures relate to game day versus non-game day revenues. GBS failed to meet its burden of proof that it was entitled to the exemption.
Conclusion
¶19 As GBS did not demonstrate that it satisfied either the establishment or seasonality prongs set forth in Hill or the "single establishment" test employed by other jurisdictions, it does not qualify for the exemption for amusement or recreational establishments under WIS. ADMIN. CODE § DWD 274.04(8).[7]
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The decision in Hill was released after DWD made its final determination.

Wisconsin Admin. Code § DWD 274.04(8) finds its federal equivalent in the FLSA exemption 29 U.S.C. § 213(a)(3) (2012), which provides that "[m]inimum wage and maximum hour requirements ... shall not apply with respect to":
[A]ny employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year....

The federal case law also suggests that some enterprises that sell goods in conjunction with an amusement or recreation activity qualified for the exemption, such as pro shops at golf courses or dry good stores in national parks. See Brennan v. Texas City Dike & Marina, Inc. , 492 F.2d 1115, 1118-19 & n.13-14 (5th Cir. 1974). The Fifth Circuit Court of Appeals explained, however, that "[i]n each instance, though, the exempted enterprise has been an integral part of a supervised, geographically delimited recreational area or 'establishment.' " Id. at 1119 (footnote omitted); see also Chao v. Double JJ Resort Ranch , 375 F.3d 393 (6th Cir. 2004) ("[H]otels, motels and eating places do not have an amusement or recreational character." (citation omitted) ). Our decision considers only the "single establishment" test and does not purport to impact or apply the "integral part" test.

The term "establishment" is not defined in the statutes. The United States Supreme Court has defined "establishment" as "a distinct physical place of business" "as it is normally used in business and in government." A.H. Phillips, Inc. v. Walling , 324 U.S. 490, 496 (1945).

GBS claims that "[a]ccording to the DWD, there simply was 'no factual dispute' involving any of these facts." We disagree that DWD's reference to "no factual dispute" was in reference to GBS's receipts. DWD decided this case on the narrow issue that GBS and Lambeau Field were not a "single establishment." As to that question and that question alone, there were no facts in dispute.

GBS argues that under Wis. Stat. § 227.57(5), if we do not agree to modify DWD's decision, then we must "order that the matter be remanded back to the agency to allow for additional evidentiary submissions." As we are to determine the "correct interpretation" of the law, Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶ 70, 382 Wis. 2d 496, 914 N.W.2d 21, no remand of this case to DWD is warranted.